IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W.J.C.C., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 3:25-cv-00153 |
| | ) Judge Stephanie L. Haines |
| DONALD J. TRUMP, *In his official* | ) |
| *capacity as President of the United States,* | ) |
| *et al.,* | ) |
| | ) |
| Respondents. | ) |

**OPINION**

**I.     Introduction**

Petitioner W.J.C.C. ("W.J.C.C."), a Venezuelan man who is currently in immigration custody and represents that he is subject to President Donald J. Trump's ("President Trump") Proclamation invoking "the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua" (the "Proclamation"), 90 Fed. Reg. 13034, pursuant to the Alien Enemies Act of 1798, (the "AEA"), 50 U.S.C. § 21, requests that this Court extend its previously-granted temporary restraining order ("T.R.O.") in this matter. Specifically, W.J.C.C. requests a T.R.O.: (1) barring his removal under the Proclamation and the AEA absent twenty-one (21) days' notice and an opportunity to be heard consistent with this Court's opinion in *A.S.R. v. Trump*, No. 3:25-CV-113, 2025 WL 1378784 (W.D. Pa. May 13, 2025) ("*A.S.R.*"), and (2) requiring Respondents to provide his counsel with at least 72 hours' notice in the event that they intend to transfer him outside of the Western District of Pennsylvania.[1]

---

[1] The Court briefly explains its finding that W.J.C.C. is only seeking these two forms of relief at this time. W.J.C.C. filed his Emergency Motion for a T.R.O. on May 21, 2025. (ECF No. 2). After a status conference with the Court on May 30, 2025, (ECF No. 17), W.J.C.C. submitted a proposed order relative to his Motion at ECF No. 2 on June 2, 2025, that only includes the two pieces of relief set forth in the text above. (ECF No. 18). Accordingly, as of the date

For the following reasons, the Court GRANTS IN PART W.J.C.C.'s Emergency Motion for a Temporary Restraining Order (ECF No. 2). Specifically, the Court will: (1) order the Government to comply with the notice requirements that the Court articulated in *A.S.R.* relative to W.J.C.C., (2) bar Respondents from transferring W.J.C.C. out of the Western District of Pennsylvania *under provisions of law other than the Immigration and Nationality Act* (the "INA"), and (3) *encourage* Respondents to provide W.J.C.C.'s counsel with 72-hours' notice in the event that Respondents intend to transfer W.J.C.C. outside of this District under the INA. To the extent that W.J.C.C. seeks any additional relief in his Motion at ECF No. 2, the Court DENIES that Motion.

## II. Analysis

Given the emergency nature of W.J.C.C.'s request and the status of this case, the Court will only briefly address the central factual and legal issues before it. For a more extensive discussion of the AEA, the Proclamation, and the Court's conclusions regarding the legality of the Proclamation and its implementation, the Court refers the reader to its Opinion in *A.S.R.* As the Court explained above, *see supra* Section I n.1, the Court incorporates by reference into this Opinion its legal conclusions from *A.S.R.* regarding the legality of the Proclamation and its implementation and re-adopts them here in full. When the Court does so, and when the Court considers the entire record and all arguments advanced by the parties in this case to date, the Court is left to consider the following two issues at this time: (1) whether W.J.C.C. has standing to

---

of this Opinion, the Court understands him to only seek a T.R.O. affording him those two forms of relief. Insofar as W.J.C.C. requests any additional relief in his Motion at ECF No. 2, the Court expressly incorporates by reference into this Opinion its legal conclusions in *A.S.R.* regarding the legality of the Proclamation and its implementation and re-adopts them here in full. Upon doing so, the Court finds that those conclusions preclude W.J.C.C. from any additional relief at this time.

challenge his removal under the AEA and the Proclamation and (2) whether the Court should extend the T.R.O. in this matter.

The Court first turns its attention to standing.

### A. W.J.C.C. Has Standing to Challenge His Removal Under the AEA and the Proclamation

With respect to the issue of standing, the Third Circuit recently offered the following articulation of the law:

> The jurisdiction of the federal courts extends only to "Cases" and "Controversies." U.S. Cont. art. III, § 2. And "[u]nder Article III, a case or controversy can exist only if a [petitioner] has standing to sue." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 286 (3d Cir. 2023) (citation omitted). To establish Article III standing, a [petitioner] must "show that []he has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 398, 409 (2013) (cleaned up). The [petitioner] has to satisfy these requirements, which []he must do "for each form of relief that [he] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

*Reading v. N. Hanover Twp., N.J.*, 124 F.4th 189, 196 (3d Cir. 2024) (cleaned up). Further, where a petitioner "seeks prospective relief to address future harm, [he] must show that the 'threatened injury is certainly impending or there is a substantial risk that the harm will occur.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)) (cleaned up).

Having outlined the law on this issue, the Court turns its attention to W.J.C.C.'s allegations that he contends establish his standing to challenge his removal under the AEA and the Proclamation.

W.J.C.C. has submitted to the Court a Declaration from his counsel, as well as an I-213 Form that ICE has filed relative to him. (ECF No. 1-2). Taken together, those documents aver as follows: (1) W.J.C.C. is a Venezuelan citizen[2] who was detained by ICE on February 9, 2025, and

---

[2] Respondents agree that W.J.C.C. is a "native and citizen of Venezuela[.]" (ECF No. 13 at 6).

sent to Moshannon Valley Processing Center ("MVPC"); (2) on April 21, 2025, ICE filed an I-213 Form alleging that W.J.C.C. is "suspected to be an associate/member of the Tren De [Aragua] [("TdA");]" (3) on or around May 21, 2025, W.J.C.C. was informed that he would be transferred to a detention center in Louisiana imminently; and (4) from his counsel's experience and belief, "Louisiana detention centers have been used as locations where detainees are placed prior to removal." (*See* ECF No. 1-2).

At this juncture, the Court reminds the reader that President Trump issued his Proclamation invoking the AEA on March 14, 2025, and his Proclamation only speaks to the removal of Venezuelan citizens who are members of TdA (who are fourteen years of age or older, are within the United States, and are not actually naturalized or lawful permanent residents of the United States). *A.S.R.*, 2025 WL 1378784, at *2–3. Therefore, the fact that this Court has before it documents indicating that ICE: (1) filed an I-213 *on April 21, 2025*, alleging that W.J.C.C. is a member of TdA and (2) allegedly prepared to transfer W.J.C.C. to Louisiana (a location where detainees are often placed prior to removal) *shortly after that designation*, strongly suggests that W.J.C.C. has shown an imminent threat of removal under the AEA and the Proclamation.

For their part, Respondents assert that W.J.C.C. has not been processed under the AEA but is instead "detained solely under the INA[.]" (ECF No. 13 at 7, 13). Further, Respondents state that ICE/ERO has concluded that W.J.C.C. is not subject to the Proclamation and the AEA. (*Id.* at 12). However, Respondents have also declined to assure the Court that W.J.C.C. will not be subject to the Proclamation in the future. (ECF No. 17 at 1) (indicating an inability to "say whether Petitioner would or would not be" designated as subject to the AEA and the Proclamation in the future); (ECF No. 19 at 1) (indicating that W.J.C.C. "*may* never be" designated as subject to the AEA and the Proclamation) (emphasis added). This unwillingness by Respondents to conclusively

4

say that W.J.C.C. is not subject to the AEA and the Proclamation, especially in light of the fact that ICE has apparently reached all (or many) of the conclusions necessary to find that W.J.C.C. *is* subject to the Proclamation, leads the Court to find that W.J.C.C. has shown an imminent threat of removal pursuant the AEA and the Proclamation. Therefore, the Court holds that W.J.C.C. has standing to challenge his removal under the AEA and the Proclamation in this case at this time. *Arevalo Millan v. Trump*, No. 5:25-CV-1207, 2025 WL 1554183, at *5–6 (C.D. Cal. June 2, 2025).[3]

With that finding in place, the Court turns its attention to the issue of extending the T.R.O. in this matter.

B.     The Court Will Extend the T.R.O. for Fourteen (14) Days

As another District Court has explained:

> Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "A temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *J.O v. Orange Twp. Bd. of Edu.*, 287 F.3d 267, 273 (3d Cir. 2002) (citation omitted). The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction. *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). A [petitioner] must demonstrate: (1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest. *Id.* (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)); *see also Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999) (setting forth the four elements for demonstrating need for preliminary injunction).

*Zaslow v. Coleman*, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015).

---

[3] For all of the foregoing reasons, the Court would find that W.J.C.C. had standing when he filed his Petition, even if he were not potentially subject to a transfer to Louisiana at that time (and the Court reaches the same finding at the present time, even if he is not potentially subject to such a transfer now).

Beginning with likelihood of success on the merits, the Supreme Court has held that detainees subject to the AEA are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Therefore, AEA detainees must "receive notice ... that they are subject to removal under the Act. The notice must be afforded within a reasonable time and in such a manner as will allow them to *actually seek habeas relief in the proper venue before such removal occurs.*" *Id.* (emphasis added). In light of this language from the Supreme Court, and for the reasons that this Court articulated in *A.S.R.*, the Court reaffirms its finding therein that Respondents must provide to individual detainees who are subject to the AEA and the Proclamation the following notice before removing them pursuant to those provisions of law: (1) twenty-one (21) days' notice and an "opportunity to be heard," (2) notice that clearly articulates the fact that the individual detainee is subject to removal under the Proclamation and the AEA, and (3) notice in English and Spanish, the language of those sought to be expelled, and if needed, Spanish-to-English interpreters shall be provided for any necessary hearings. Because W.J.C.C. has counsel, the Court will also direct Respondents to provide all of the foregoing notice to his attorney of record in this case. Therefore, insofar as W.J.C.C. seeks this notice before Respondents remove him under the AEA and the Proclamation, the Court holds that he has shown a likelihood of success on the merits.

Turning to irreparable harm, the Supreme Court has explained that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") allows for continued "prosecution of a petition after removal[.]" *Nken v. Holder*, 556 U.S. 418, 435 (2009). Accordingly, the "burden of removal alone cannot constitute the requisite irreparable injury" in that context because "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail can be

afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id.* Conversely, in the context of the AEA, the law is far from settled, and as the United States District Court for the Southern District of New York recently noted, current events make it unclear whether individuals who are removed from the country but are not actually subject to removal (that is, individuals who are removed in error) will be able to return. *G.F.F. v. Trump*, No. 25-CV-2886, 2025 WL 1301052, at *10 (S.D.N.Y. May 6, 2025); *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025).

Further, although Respondents have represented in their *briefing* that they will provide individuals subject to the AEA and the Proclamation the notice and opportunity to be heard that this Court articulated in *A.S.R.*, (ECF No. 13 at 5), they have also apparently declined to enter into a *stipulation* with W.J.C.C. firmly agreeing to provide W.J.C.C. with such notice and opportunity to be heard. (ECF Nos. 17, 19).[4]

For all of the foregoing reasons, W.J.C.C. has shown that, in the absence of a T.R.O. from this Court, he faces a substantial significant risk of removal to another country under the AEA and the Proclamation without sufficient notice and an opportunity to be heard before such removal, and without the possibility of return to this country in the event such removal is eventually found

---

[4] The Court notes that a "'decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case.'" *Daubert v. NRA Group, LLC*, 861 F.3d 382, 395 (3d Cir. 2017) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). Therefore, while *this Court* firmly believes in the conclusions of *A.S.R.* and is likely to apply the conclusions therein in the same fashion in future cases involving the same legal issues, there is no legal principle binding any party to the conclusions of *A.S.R.* other than the parties to that case (and, as a result of today's Opinion and Order, the parties to this case). In other words, in the absence of binding authority from the Third Circuit or the Supreme Court, or a stipulation by the parties, there is no legal bar to Respondents removing individuals within this District from the country under the AEA and the Proclamation absent the notice that the Court articulated in *A.S.R.* And this Court will not rest on assurances in a brief that such notice will be provided before removal. Accordingly, the Court deems this representation by Respondents insufficient to preclude a finding of irreparable harm.

to be unlawful. Therefore, the Court finds that W.J.C.C. has shown a significant likelihood of irreparable harm sufficient to warrant a T.R.O.[5]

Finally, with respect to the balance of the equities and the public interest, because W.J.C.C. is currently detained, he is not posing a risk to public safety at this time. *G.F.F.*, 2025 WL 1301052, at *11. And if this Court does not grant W.J.C.C. injunctive relief, there is a significant risk that he would be deprived of the rights due him under Supreme Court precedent. *Id.* Therefore, the Court finds that the two remaining factors support the grant of a T.R.O. on the issue of notice in this case. *Id.*[6]

In short, this Court grants W.J.C.C.'s Motion insofar as he seeks an order requiring Respondents to provide him with the same notice that the Court articulated in *A.S.R.*[7] The Court also finds that it is appropriate to bar W.J.C.C.'s removal from this Judicial District under any provision of law other than the INA.[8]

---

[5] Insofar as W.J.C.C. raises the issue of the Foreign Affairs and Reform and Restructuring Act of 1998 ("FARRA"), (ECF No. 1 at 8–9), the Court finds that he has failed to show a risk of irreparable harm. Indeed, Respondents represent that the "United States continues to abide by its policy not to remove aliens to countries in which they are likely to be tortured." (ECF No. 13 at 22). Further, Respondents note that the Proclamation calls for action that is "consistent with applicable law[.]" (*Id.* at 5) (internal quotation marks and citation omitted) (emphasis removed).

Because: (1) Respondents have assured the Court that they are abiding by the law, (2) the Proclamation itself calls for such action (which distinguishes this issue from that of notice and opportunity to be heard), and (3) the Court possesses no evidence to the contrary of Respondents' representations, the Court finds that W.J.C.C. has failed to show a risk of irreparable harm in the absence of a T.R.O. on this ground. In reaching this finding, the Court still strongly encourages Respondents to continue to comply with their Convention Against Torture obligations and all other legal requirements in their interactions with W.J.C.C.

[6] The Court's Order does not operate as against President Trump. (ECF No. 1 at 5).

[7] The Court finds that the nominal bond of $1.00 that it has previously required W.J.C.C. to post in this matter (ECF No. 4 at 1) remains appropriate under all relevant legal principles. *A.S.R.*, 2025 WL 1378784, at *23.

[8] The Court includes this provision in accordance with the proposed language submitted by Respondents. (ECF No. 19 at 2) ("ORDERED, pending further order of this Court, not to transfer Petitioner from the Western District of Pennsylvania except as pursuant to Title 8 of the United States Code.").

### III. Conclusion

For all of the foregoing reasons, the Court finds that good cause exists to extend the T.R.O. in this matter until **June 19, 2025, at 9:32 A.M.** Fed. R. Civ. P. 65(b)(2). That T.R.O. will be consistent with the foregoing Opinion.

An appropriate Order follows.

DATED: June 4, 2025

_____
STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE